**[Cite as *State v. Martinez*, 2020-Ohio-3929.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
FULTON COUNTY

| | |
|---|---|
| State of Ohio | Court of Appeals No. F-19-010 |
| Appellee | Trial Court No. 15CR68 |
| v. | |
| Samuel Martinez | **DECISION AND JUDGMENT** |
| Appellant | Decided: July 31, 2020 |

* * * * *

Scott A. Haselman, Fulton County Prosecuting Attorney, for appellee.

Clayton M. Gerbitz, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal of a September 4, 2019 judgment of the Fulton County Court of Common Pleas, finding appellant guilty, following a jury trial, on two counts of rape, in violation of R.C. 2907.02, felonies of the first degree, and two counts of gross sexual imposition, in violation of R.C. 2907.05, felonies of the third degree.

{¶ 2} For sentencing purposes, the trial court merged the two gross sexual imposition convictions into the two rape convictions.  Appellant was sentenced to a term of incarceration of 25 years to life on each rape conviction, ordered to be served concurrently, for a total term of incarceration of 25 years to life.

{¶ 3} These cases stem from the discovery that appellant had repeatedly engaged in sexual intercourse and an array of other sexual activities over the course of a two-year period with his 11-year-old step-granddaughter.  The victim had been regularly entrusted into his care on an overnight basis by her parents due to their night-shift work schedule.  Appellant conceded to the crimes and furnished details of the offenses to the investigating officers which were consistent with information provided by the victim.

{¶ 4} For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 5} Appellant, Samuel Martinez, sets forth the following two assignments of error:

[I]  There was insufficient evidence to support appellant's [g.s.i.] convictions and the specifications of force for the two rape charges.

[II]  Counsel was ineffective for failing to pursue not guilty by reason of insanity.

{¶ 6} The following undisputed facts are relevant to this appeal.  The victim's mother is married to appellant's son.  Appellant has known the victim, his step-granddaughter, since 2007, when the victim was five years of age.

2.

{¶ 7} In 2013, the victim's parents began regularly leaving her in appellant's care on an overnight basis due to their work schedule. The victim would spend the night with appellant, her step-grandfather, at either his camper or at his home.

{¶ 8} Starting soon after this family-based childcare arrangement began, appellant would come into the victim's room at night, place his hand down her pajama pants, and digitally penetrated the victim. The victim would often feign sleep or illness in an unsuccessful attempt to avoid being subjected to appellant's actions.

{¶ 9} Appellant's sexual misconduct against the victim quickly escalated. It evolved into acts ranging from appellant performing oral sex upon the victim, following the digital penetration, to appellant instructing the victim where to position herself at the edge of the bed, so that appellant could remove her pants, push her legs apart, and hold her down while vaginally raping the victim.

{¶ 10} Appellant committed a wide range of sexual offenses against the victim during the several years when she was often placed into his overnight care. Sexual offenses against the victim occurred each time she was left with appellant. Appellant would sometimes buy the victim presents, or otherwise attempt to placate and manipulate the victim in an effort to continue her silence.

{¶ 11} When appellant's crimes were ultimately disclosed by the victim several years after they had begun, the investigating officers recovered a dildo that appellant had often used upon the victim during the incidents occurring at appellant's camper. The item was described by the victim in detail during her trial testimony. Appellant's

3.

purchase of the item prior to the offenses was captured on video surveillance footage at an area Head Shed store. Witness testimony from an employee further collaborated the purchase.

{¶ 12} During the investigation following the victim's disclosure of the incidents, appellant conceded to an investigating officer that he had sexually penetrated and acted upon his step-granddaughter on numerous occasions, in numerous ways, over a several year period of time, at both his home and camper.

{¶ 13} Appellant recounted the crimes in detail to law enforcement. Appellant's recitation of the events comported with the other evidence of the crimes, including the information furnished by the victim.

{¶ 14} On July 21, 2015, appellant was indicted on two counts of rape, in violation of R.C. 2907.02, felonies of the first degree, with accompanying force specifications, and two counts of gross sexual imposition, in violation of R.C. 2907.05, felonies of the third degree.

{¶ 15} Competency evaluations were requested, both by appellant and appellee. Prior to the jury trial, a total of four mental health evaluations were conducted. Appellant was evaluated by the Northwest Ohio Psychiatric Hospital, the Court Diagnostic & Treatment Center, Twin Valley Behavioral Healthcare, and the Kalamazoo Psychiatric Hospital.

{¶ 16} A plurality of three of the four evaluations determined appellant to be competent to stand trial or malingering in connection to same. Just one of the four

4.

evaluations, the Kalamazoo Psychiatric Hospital, deemed appellant not competent to face trial.

{¶ 17} On May 30, 2019, an evidentiary hearing was held, during which all of the evaluations were presented and jointly admitted with the consent of the parties. The trial court considered the reports. It determined, based upon the bulk of the evidence presented, that appellant was competent to stand trial.

{¶ 18} On August 29-30, 2019, a two-day jury trial was conducted. Appellant was found guilty on all counts. This appeal ensued.

{¶ 19} In the first assignment of error, appellant asserts that there was not sufficient evidence in support of the gross sexual imposition convictions or the force specifications accompanying the rape convictions. Appellant acknowledges the evidentiary sufficiency of the rape convictions.

{¶ 20} It is well-established that in reviewing a sufficiency of the evidence claim presented on appeal, the relevant inquiry is whether, in viewing the evidence and all reasonable inferences in the light most favorable to the prosecution, a rational trier of fact could have found the elements of the crime to have been proven. *State v. Jenks*, 61 Ohio St.3d 257, 574 N.E. 2d 492 (1991), paragraph two of the syllabus.

{¶ 21} Appellant's principal contention in the first assignment of error is that the gross sexual imposition convictions were not supported by sufficient evidence. We are not persuaded.

5.

{¶ 22} R.C. 2907.05(A)(4) establishes in pertinent part, "No person shall have sexual contact with another * * * when * * * the other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."

{¶ 23} R.C. 2907.01(B) defines sexual contact, in pertinent part, as, "any touching of an erogenous zone of another."

{¶ 24} R.C. 2907.01(A) defines sexual conduct, in pertinent part, as, "vaginal intercourse between a male and a female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus or other object."

{¶ 25} Appellant's chief argument in support of the sufficiency challenge to the gross sexual imposition convictions lies in one portion of the victim's testimony in which the victim testified that appellant's digital sexual activity with the victim was via digital insertion, versus digital touching or rubbing of the erogenous zone prior to proceeding to digital insertion.

{¶ 26} Appellant suggests that inadequate evidence of sexual contact via touching by appellant was presented in support of the gross sexual imposition convictions. The record reflects otherwise.

{¶ 27} The record of evidence encompasses ample, unrefuted evidence of appellant committing a wide range of actions against the victim constituting countless

6.

instances of sexual contact and sexual conduct.  Suggestions to the contrary are without merit.

**{¶ 28}** When testifying regarding the volume of sexual activity appellant committed against her, the victim was asked, "[H]ow many times did he put his finger inside your vagina?"  The victim replied, "*All the time * * * Like at least once a day*."  (Emphasis added).

**{¶ 29}** The victim later described in detail appellant's habitual pattern when engaging in sexual misconduct against her.  She testified, "He would start off in a routine. He would take me into the room in the camper and he would pull my pants off me and start fingering me and then he would, what they call eating you out, and then he would start having sex with me."

**{¶ 30}** When asked how appellant normally approached the digital sexual activity portion of the sexual offenses against her, the victim testified, "He would either spit on me or use this oil."  Appellant's position on appeal that the digital offenses against the victim were devoid of touching runs counter to the entirety of the evidence.

**{¶ 31}** The victim also testified in detail regarding appellant rubbing a dildo he had purchased at the Head Shed on the outside of her vagina, prior to inserting it into her vagina.  This occurred on multiple occasions.  Again, the item was recovered from appellant's camper during the execution of the search warrant.

**{¶ 32}** The unrefuted evidence establishes that appellant's sexual crimes against the victim encompassed both sexual conduct and sexual contact.

7.

**{¶ 33}** The victim's unrefuted, articulate, and detailed trial testimony, consistent with appellant's own investigatory admissions and additional items of evidence recovered, are sufficient to convince a rational trier of fact of appellant's commission of gross sexual imposition against the victim.

**{¶ 34}** In addition, appellant suggests that there was not sufficient evidence in support of the use of force specification accompanying the rape convictions. Appellant acknowledges that there is sufficient evidence in support of the rape convictions themselves.

**{¶ 35}** In support of the sufficiency challenge on the use of force issue, appellant cites one portion of the victim's testimony in which the victim testified that appellant did not threaten or physically restrain the victim when using the dildo, upon and into, the victim.

**{¶ 36}** We find that a more accurate reflection of the forceful nature underlying appellant's offenses is reflected in later victim testimony during which the victim details appellant's routine course of conduct against her.

**{¶ 37}** For context, appellant was the 250-pound step-grandfather and assigned overnight caregiver of the 11-year-old victim. During the night, appellant would enter her room, wake her up, position her at the edge of the bed, remove her pajama pants, hold her legs apart, and engage in vaginal intercourse with her. The female victim was 11-12 years of age when these events occurred.

8.

{¶ 38} To suggest an absence of force despite the vast disparity in age and size of the parties, the position of authority over the victim by appellant, and the use of force described by the victim, is unreasoned and groundless.

{¶ 39} The victim testified, "[Appellant] told me to sit on the bed and *then he would pull my legs closer to the edge of the bed* and then *he would take my pants and underwear off * * * He would hold my legs while having sex with me*." (Emphasis added).

{¶ 40} We find that the record of evidence encompasses considerable, convincing evidence in support of the force specification accompanying the rape offenses.

{¶ 41} The record reflects, upon examining the evidence in the light most favorable to appellee, that a rational trier of facts could have found the gross sexual imposition offenses and the force specifications of the rape offenses proven beyond a doubt.

{¶ 42} Wherefore, we find appellant's first assignment of error not well-taken.

{¶ 43} In appellant's second assignment of error, appellant alleges that trial counsel was ineffective. We do not concur.

{¶ 44} In support of the second assignment of error, appellant specifically asserts that trial counsel was deficient in an outcome determinative way in not presenting a not guilty by reason of insanity defense at trial. We do not concur.

{¶ 45} It is well-established that in order to prevail on an ineffective assistance of counsel claim, it must be demonstrated that counsel's objective performance was

9.

deficient in some specified way, and that, but for the demonstrated deficiency, the outcome of the matter would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 46} In principal support of this assignment, appellant cites a May 9, 2019 determination by the Kalamazoo Psychiatric Hospital that appellant was not legally competent.

{¶ 47} Appellant's position fails to recognize that the plurality of the assessments of appellant, three of the four, found him to be legally competent or malingering in connection to same.

{¶ 48} On February 28, 2018, the Court Diagnostic & Treatment Center concluded that, "[While] I cannot give an opinion regarding his competency to stand trial * * * *it appears that he may be malingering and he certainly has a significant impetus to do this*." (Emphasis added).

{¶ 49} On July 26, 2018, the competency evaluation of the Northwest Ohio Psychiatric Hospital determined, "*Samuel Martinez is capable of understanding the nature and objectives of the legal proceedings against him*." (Emphasis added).

{¶ 50} On May 20, 2019, Twin Valley Behavioral Healthcare concluded upon their assessment of appellant, "*My review of all of the available records on Mr. Martinez and my own extensive observations and interviews does not indicate the presence of any underlying serious mental health or severe neurocognitive condition that would preclude him from being fit to proceed with his case*." (Emphasis added).

10.

**{¶ 51}** Accordingly, it cannot be demonstrated that the decision to not pursue a not guilty by reason of insanity defense at trial was anything other than a proper, tactical choice based upon counsel's awareness that three of the four competency reports cut against the merit of the defense and based upon the trial court's finding at the May 30, 2019 evidentiary hearing that appellant was competent to stand trial.

**{¶ 52}** As such, appellant has not, and cannot, demonstrate that, but for the pursuit of a defense unsupported by the bulk of the evidence, the outcome of the matter would have been different.

**{¶ 53}** Wherefore, we find appellant's second assignment of error not well-taken.

**{¶ 54}** On consideration whereof, the judgment of the Fulton County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                 _____

JUDGE

Thomas J. Osowik, J.        

_____

Christine E. Mayle, J.        JUDGE
CONCUR.

_____

JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.